# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| **MIKE O. IKE and EARLENE G. IKE.** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 11-02914 |
| | ) | |
| **QUANTUM SERVICING CORPORATION,** | ) | |
| **WMC MORTGAGE CORPORATION, and** | ) | |
| **WILSON & ASSOCIATES, PLLC,** | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant Wilson & Associates, PLLC's ("Wilson") November 1, 2011 Motion to Dismiss. (Motion, ECF No. 8.) Plaintiffs Mike O. Ike and Earlene G. Ike (collectively, the "Ikes") have not responded and the time to do so has passed. See W.D. Tenn. Civ. R. 7.2(a)(2) ("The response to the motion and its supporting memorandum . . . shall be filed within 14 days after service of the motion . . . [and] [f]ailure to respond timely to any motion . . . may be deemed good grounds for granting the motion."). For the following reasons, Wilson's Motion is GRANTED.

**I. Background**

The Ikes bring suit for damages and a writ of Forcible Entry and Detainer arising from a scheduled foreclosure sale of

their properly located at 9972 Humphrey Road, Cordova, Tennessee (the "Property"). (Compl. ¶ 1, ECF No. 1-2.) On May 6, 2005, the interest rate on the Ikes' adjustable-rate mortgage increased by 6.125%. (Id. ¶ 12.) As a consequence of the rate increase, the Ikes allege they were unable to make their mortgage payments. (Id.) The Ikes allegedly contacted Quantum to restructure their mortgage so they could maintain ownership of the Property. (Id.)

On August 20, 2010, the Ikes allegedly received a letter from Dave Morrow ("Morrow"), the Asset Manager for Quantum. (Id. ¶ 13.) Morrow offered the Ikes a "short payoff" of $370,827.01 from a principal balance of $716,585.18. (Id.) The Ikes were unable to accept Quantum's offer. (Id.) In September 2011, the Ikes allegedly sent Quantum a "Qualified Written Request" in compliance with the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605. (Id. ¶ 17.) That request was intended "to come to an understanding of what company currently owned the promissory note . . . [and] to work out a settlement." (Id.) Quantum responded on September 8, 2011, explaining that the Qualified Written Request was invalid. (Id.) The Ikes allege that Quantum has failed to respond to additional requests for mortgage assistance. (Id.)

The Ikes aver that they were eligible for various federal programs, including the Home Affordable Modification Program

2

("HAMP") and Making Homes Affordable ("MHA"). (Id. ¶ 14.) The Ikes allegedly did not receive proper notice of foreclosure under HAMP and Tennessee law. (Id. ¶ 18.) They were purportedly entitled to receive a certified letter to the effect that "all possibilities for modification had been exhausted, and that [the Ikes] did not qualify for any of the federal programs available to distressed property owners." (Id.) Quantum allegedly did not inform the Ikes of their eligibility for federal assistance. (Id. ¶ 14.)

The Ikes allege that "the foreclosure sale should never have been pursued because the [Ikes] were never advised of the federal programs for which they qualified nor offered an alternative such as a forbearance plan making payments as required by the forbearance plan by [Quantum]." (Id. ¶ 19.) According to the Ikes, Quantum "deliberately and intentionally set [the Ikes] up such that the costs, the fees, and the deficit accrued on the mortgage account . . . force[d] a foreclosure sale." (Id.) Quantum and Wilson allegedly forced the foreclosure sale through correspondence that was "confusing, misleading, and contradictory." (Id.) The Ikes allege violations of the Tennessee Consumer Protection Act ("TCPA"), the Due Process Clause, and the common law theory of good faith and fair dealing. (Id. at 8-11.)

**II. Jurisdiction and Choice of Law**

Under 28 U.S.C. § 1332(a), this Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" between citizens of different states. 28 U.S.C. § 1332(a)(1). The Ikes are Tennessee citizens. Quantum is a Delaware corporation with its principal place of business in Florida. (Notice of Removal 3-4, ECF No. 1.) WMC Mortgage is incorporated and has its principal place of business in Connecticut. (Id. at 4.) Wilson is an Arkansas professional association. (Id.) The subject of the litigation is a deed of trust worth more than $750,000. The parties are completely diverse, and the amount-in-controversy requirement is satisfied.

In a diversity action, state substantive law governs. See Montgomery v. Wyeth, 580 F.3d 455, 459 (6th Cir. 2009) (citation omitted); Brocklehurst v. PPG Indus., Inc., 123 F.3d 890, 894 (6th Cir. 1997) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)). A federal district court is required to apply the "choice of law" rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941), Max Arnold & Sons, LLC v. W.L. Haily & Co., 452 F.3d 494, 499 n.7 (6th Cir. 2005). "Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side." Klaxon, 313 U.S. at 496.

For tort claims, Tennessee follows the "most significant relationship" rule, which provides that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." Hicks v. Lewis, 148 S.W.3d 80, 86 (Tenn. Ct. App. 2003) (quoting Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992)). The alleged injuries in this case occurred in Tennessee, and Wilson assumes that Tennessee law applies. The Ikes have not responded. Tennessee substantive law applies.

## III. Standard of Review

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to

5

relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Twombly, 550 U.S. at 555).

Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

**IV. Analysis**

Wilson argues that the Complaint "specifically fails to allege any particular wrongful action taken by Wilson." (Wilson Mem. 1, ECF No. 8-1.) According to Wilson, the Ikes' TCPA allegations do not satisfy the TCPA's heightened pleading requirement. (Id. at 3.) Wilson also argues that the Ikes have not pled a plausible claim under the common law duty of good

6

faith and fair dealing. (Id.) Finally, Wilson argues that the Ikes' Due Process allegations fail because Wilson is not a state actor. (Id. at 4.)

### A. TCPA

The TCPA provides a private right of action for a person who suffers financial loss as a result of another's "unfair or deceptive act or practice." Tenn. Code Ann. § 47-18-109. To establish a prima facie case, a plaintiff must allege facts showing that the "defendant engaged in an act or practice that is unfair or deceptive as defined under the [TCPA], and that [the] plaintiff suffered a loss of money, property, or a thing of value as a result of the unfair or deceptive act of [the] defendant." Rhodes v. Bombardier Capital Inc., No. 3:09-CV-562, 2010 U.S. Dist. LEXIS 101176, at *5-6 (E.D. Tenn. Sept. 24, 2010) (citing Tenn. Code Ann. § 47-18-109).

The TCPA does not define the terms "unfair" or "deceptive," but it provides a non-exclusive list of acts and practices that are per se unfair or deceptive. See Tenn. Code Ann. § 47-18-104(b). For acts or practices not on the list, courts must determine whether they are unfair or deceptive on a case-by-case basis. See Wolfe v. MBNA Am. Bank, 485 F. Supp. 2d 874, 890 (W.D. Tenn. 2007) (citing Ganzevoort v. Russell, 949 S.W.2d 293, 300 (Tenn. 1997)). "[T]he Tennessee Supreme Court has recognized that a deceptive act or practice is a material

7

representation, practice or omission likely to mislead a reasonable consumer." Cloud Nine, LLC v. Whaley, 650 F. Supp. 2d 789, 797 (E.D. Tenn. 2009) (citing Ganzevoort, 949 S.W.2d at 299). An act or practice is unfair only if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." Ward Adventures, LLC v. Buddy Gregg Motor Homes, Inc., No. 3:05-CV-236, 2007 U.S. Dist. LEXIS 19890, at *12 (E.D. Tenn. Mar. 20, 2007) (quoting Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005)).

Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies to TCPA claims. See Metro. Prop. & Cas. Ins. Co. v. Bell, No. 04-5965, 2005 U.S. App. LEXIS 17825, at *15-16 (6th Cir. Aug. 17, 2005); Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co., 694 F. Supp. 2d 888, 900, 915 (W.D. Tenn. 2010) (applying Rule 9(b)'s particularity requirement and dismissing plaintiff's TCPA claims); cf. Harvey v. Ford Motor Credit Co., 8 S.W.3d 273, 275-276 (Tenn. Ct. App. 1999) (noting that Tennessee Rule of Civil Procedure 9.02's requirement that plaintiffs state any averment of fraud with particularity applies to TPCA claims). "To satisfy this requirement a complaint must set forth specific fraudulent or deceptive acts rather than general allegations." Agfa Photo

8

United States Corp. v. Parham, No. 1:06-cv-216, 2007 U.S. Dist. LEXIS 40980, at *31-32 (E.D. Tenn. June 5, 2007) (citing Humphries v. West End Terrace, Inc., 795 S.W.2d 128, 132 (Tenn. Ct. App. 1990)).

The Ikes allege that:

> By virtue of the actions of Defendants, Quantum [] and their law firm, revealed that all acted in conjunction with another, the federal guidelines designed to assist distressed homeowners were deliberately and maliciously violated and further patently ignored in a manner that showed such disregard of the legal obligations including those under the [TCPA] with which each entity was required to comply that punitive damages are warranted in this case in order to protect society from irreparable harm that is fraught by the very nature of driving decent Americans and other hard-working individuals from the family home wrongfully and illegally when reasonable recourse is not only available but mandated by federal law . . .
>
> The [Ikes] showed a clear intent to keep their home: yet they were not advised that they could qualify for modification or he had the ability to pay reasonably modified note. Yet, Quantum ignored the [Ikes'] request and sought no financial and other information that would have indicated that the [Ikes] met all the criteria for repayment programs that would pay for the residence and ultimately bring his loan current.

(Compl. ¶ 8-9.)

The Ikes' TCPA allegations are not well pled. "Courts applying the TCPA have held that a plaintiff must plead with particularity the circumstances of the unfair or deceptive conduct." Peoples v. Bank of Am., No. 11-2863-STA, 2012 U.S. Dist. LEXIS 22208, at *36 (W.D. Tenn. Feb. 22, 2012); see also

9

Bell, 2005 U.S. App. LEXIS 17825, at *16. Allegations that Wilson "disregard[ed]" legal obligations and "ignored the Ikes' request" for mortgage relief at most suggest that Wilson acted negligently. Bell, 2005 U.S. App. LEXIS 17825, at *16. Negligence is not fraud, and the Ikes' allegations, even drawing all reasonable inferences in their favor, fail to address how disregarding or ignoring their requests constituted fraudulent conduct. See id. ("But Bell has at most suggested in her pleadings and on appeal that Cantrell acted negligently in completing her application and that Metropolitan wrongly rejected her claim."). That Quantum may have "patently ignored" the HAMP guidelines does not speak to "the specifics of any representations" Quantum or Wilson made. Peoples, 2012 U.S. Dist. LEXIS 22208, at *32. Stating a claim under the TCPA requires more than "general allegations." The Ikes' TCPA claim is DISMISSED. Parham, No. 1:06-cv-216, 2007 U.S. Dist. LEXIS 40980, at *31-32.

**B. Breach of Common Law Good Faith and Fair Dealing**

In Tennessee, parties to a contract "owe each other a duty of good faith and fair dealing as it pertains to the performance of a contract." Weese v. Wyndham Vacation Resorts, No.: 3:07-CV-433, 2009 U.S. Dist. LEXIS 55328, at *13 (E.D. Tenn. June 30, 2009); see also Barnes & Robinson Co. v. Onesource Facility Servs., Inc., 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006). Every

10

contract carries with it the implied covenant of good faith and fair dealing. Goot v. Metro. Gov't of Nashville and Davidson County, No. M2003-02013-COA-R3-CV, 2005 Tenn. App. LEXIS 708, at *22 (Tenn. Ct. App. Nov. 9, 2005). Tennessee courts analyze the implied covenant through a lens colored by two overarching policy goals: honoring the contracting parties' reasonable expectations and protecting "the rights of the parties to receive the benefits of the agreement they entered into." Barnes & Robinson Co., 195 S.W.3d at 642 (citations omitted). The implied covenant does not, however, "create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement." Goot, 2005 Tenn. App. LEXIS 708, at *7 (Tenn. Ct. App. Nov. 9, 2005). Instead, the implied covenant "'may be an element or circumstance of . . . breaches of contracts.'" Weese, 2009 U.S. Dist. LEXIS 55328, at *14 (quoting Solomon v. First Am. Nat'l Bank of Nashville, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989)).

The Ikes allege that the actions of Quantum and Wilson "reveal a void of any good faith dealing in their participation in the filing of a Notice of foreclosure of the Ikes' home and even fraudulent/negligent misrepresentations regarding the Ikes' only have the recourse of foreclosure plus the last minute effort to extract more money from the [Ikes] prior to foreclosure." (Compl. at 9.) According to the Ikes, no "real

effort was made to comply with any of the rules and regulations that Defendants Banks were required to comply with as a result of both their adopting of the federal HAMP programs that were later deliberately ignored so that the [Property] would probably be purchased for an amount equal to approximately fifty (50%) of its value." (Id. at 9-10.) The Ikes aver that the "failure to respect the most basic of the rules and regulations that are the basis of the HAMP program denied Plaintiffs their legal rights under the circumstances of their financial situation for which programs they qualified." (Id. at 10.)

The Ikes' claim is not plausible. "[A] breach of the implied covenant of good faith and fair dealing is not an independent basis for relief, but rather 'may be an element or circumstance of . . . breaches of contracts.'" Golf Sci. Consultants, Inc. v. Cheng, No. 3:07-CV-152, 2009 U.S. Dist. LEXIS 37721, at *16 (E.D. Tenn. May 4, 2009) (quoting Solomon, 774 S.W.2d at 945). Thus, "absent a valid claim for breach of contract, there is no cause of action for breach of implied covenant of good faith and fair dealing." Envoy Corp. v. Quintiles Transnat'l Corp., No. 3:03cv0539, 2007 U.S. Dist. LEXIS 54429, at *8 (M.D. Tenn. July 26, 2007). Because the Ikes do not allege breach of contract, their implied covenant claim must be DISMISSED.

### C. Due Process Clause

The Ikes' Due Process allegations state:

> The Plaintiffs were denied their rights under due process of law by the manner in which the Mortgage Service Company and their attorneys sought to deprive Plaintiffs of the title to their home. . .
>
> It is notable that the federal guidelines provide for an appeal whereupon there occurs a violation of the rules, regulations, and laws that were developed by the Federal Reserve Bank, the Treasury Department, and HUD in order to provide assistance to the American citizens who have been injured by the wrongful conduct of the financial institutions of this nation.
>
> This deprivation of property from the citizens of this nation who are in many cases victims of a force much more powerful than they is a denial of due process; it is wrongfully disingenuous for the Defendants to hide behind the legal process and to fail to provide documents that would have informed the Plaintiffs of the "true owner" of the debt on this property and not respect the processes that has been put in place as an attempt by the federal government and by state law to ameliorate the aftermath of the rampant greed of institutions like the banks that were allowed to undermine the entire American economy.

(Compl. at 10-11.)

The Ikes' claim is not plausible. Foreclosure claims will not sound in due process "'in the absence of state action.'" Peoples, 2012 U.S. Dist. LEXIS 22208, at *36 (quoting Powell v. GMAC Mortg., No.: 3:10-CV-87, 2010 U.S. Dist. LEXIS 50869, at *10 (E.D. Tenn. May 24, 2010)). Because the Ikes' allege no state action, there can be no due process violation.

### V. Conclusion

For the foregoing reasons, Wilson's Motion is GRANTED. The Ikes' claims against Wilson are DISMISSED.

13

So ordered this 27th day of August, 2012.


                                        s/ Samuel H. Mays, Jr.
                                        SAMUEL H. MAYS, JR.
                                        UNITED STATES DISTRICT JUDGE